UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DENNIS W. CLUBB, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Cause No. 1:13-cv-1230-WTL-MJD ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Dennis L. Clubb requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The Court now rules as follows.

### I. PROCEDURAL HISTORY

Clubb filed his application for DIB on August 5, 2010, alleging disability beginning July 15, 2003, due to a number of ailments.[1] Clubb's application was initially denied on January 25, 2011, and again upon reconsideration on May 2, 2011. Thereafter, Clubb requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on January 11, 2012, via video conference before ALJ Rebecca LaRiccia. Clubb and his counsel appeared in Indianapolis, Indiana, and the ALJ presided over the hearing from Oak Brook, Illinois. During the hearing, Thomas F. Dunleavy also testified as a vocational expert. On March 2, 2012, the ALJ issued a

---

[1] Clubb was approved for Supplemental Social Security Income ("SSI") as of August 2010, due to COPD.

decision denying Clubb's application for benefits. The Appeals Council upheld the ALJ's decision and denied a request for review on May 30, 2013. This action for judicial review ensued.

## II. EVIDENCE OF RECORD

The relevant medical evidence of record follows.

Prior to applying for benefits, Clubb worked in the food service industry for almost thirty years. In 2003, however, Clubb had a bowel obstruction that required surgery to correct. Thereafter, he returned to work as a supervisor in the food service industry, but was unable to continue his job due to pain and other side effects from his abdominal surgery.[2] Then, in October 2004, Clubb had a second bowel obstruction surgery. He did not return to work after the second surgery. In July 2008, Clubb had a third abdominal surgery to repair an aortic aneurysm. During the hearing before ALJ LaRiccia, Clubb described the side effects from his abdominal surgeries as follows:

> I cannot bend over and pick a piece of paper up. The doctor told me not to. I cannot sleep in a totally prone position. I have to have my head up and shoulders elevated and my feet elevated so I don't tear the repair up, the tissue in the side where my surgeries were because I have no stomach wall left to replace it. When [the doctor] gave me my prognosis for [a] fourth surgery, he said it would not be good.[3]

Tr. at 36. Clubb also has to eat pureed foods and take Metamucil (a fiber supplement) so that his digestive system does not become blocked again. He wears an abdominal binder and must sit down to shower and do most other tasks. According to Clubb, he also "has no control on the

---

[2] As a supervisor, Clubb managed a staff, but also had to cook, clean, serve food, and lift heavy food boxes when required. According to Clubb, he was no longer able to stand for long periods, lift heavy items, or bend, stoop, and crawl to clean various kitchen items.

[3] In Clubb's words, if he injures his stomach or tears the repair, he would have no stomach or muscle left for another repair.

2

timing of when [he'll] evacuate [his] bowels." *Id.* at 44. As a result, sometimes he finds himself "extricating or going to the restroom without having control over [it]." *Id.* Clubb maintains that he is unable to work, even at a sit down job, because his stomach repairs could "tear at any time . . . [i]f [he] twist[s] the wrong way." *Id.* at 43.

In August 2007, Clubb was also diagnosed with chronic obstructive pulmonary disease ("COPD"). Since then, he has used a combination of inhalers to treat his breathing problems.[4]

Clubb was also diagnosed with degenerative disc disease with sciatica in 1992, which progressively worsened over the years. Clubb's back pain was further confirmed by an MRI on May 27, 2009. The MRI revealed the following:

> Degenerative disc disease with left posterior disc herniation and annular tear at L4-5.
>
> Degenerative disc disease with central disc herniation and annular tear at L3-4.
>
> Small central disc herniation with annular tear lumbosacral level.
>
> Sacral arachnoid cyst.
>
> Multilevel degenerative changes . . .
>
> At L3-4 there is nearly complete loss of the disc space. There is a central disc herniation with a large annular tear. This obliterates the anterior subarachnoid space and compresses the anterior thecal sac. There is also some early facet arthropathy and ligamentous hypertrophy with early foraminal narrowing.
>
> At L4-5 there is nearly complete loss of the disc space. There is a left posterior disc herniation with an associated annular tear. This depresses the left anterior aspect of the thecal sac and abuts the exiting nerve root.
>
> At the lumbosacral level there is a small central disc herniation with an annular tear. This abuts but does not deform the thecal sac.

*Id.* at 595-96.

---

[4] As noted above, Clubb was approved for SSI as of August 2010, due to his COPD.

Clubb began physical therapy in April, 2009, four months after his date last insured. The physical therapy was not successful, and the doctor prescribed a TENS unit and Lyrica for treatment of Clubb's back pain. Clubb's abdominal binder, however, made it impossible to wear the TENS unit. At that time, Clubb's doctor was not optimistic about epidural injections due to "the chronicity of his symptoms." *Id.* at 528.

## III.  APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d) (1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled.

4

§ 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

On review, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.,* and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue,* 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1177.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Clubb had not engaged in substantial gainful activity since July 1, 2003, his alleged onset date. At step two, the ALJ concluded that Clubb suffered from the following severe impairments: a history of bowel obstruction (times two), an abdominal aortic aneurysm repair, COPD, and degenerative disc disease. At step three, the ALJ determined that Clubb's severe impairments did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Clubb had the residual functional capacity ("RFC") to perform

> light work . . . with no climbing of ladders, ropes or scaffolds; and occasional bending, stooping, kneeling, squatting, crouching, crawling, and climbing of ramps or stairs. [Clubb] should also avoid concentrated exposure to humidity, pulmonary irritants, such as dust, fumes, gases, and the like, and hazards, such as unprotected heights and dangerous moving machinery.

5

Tr. at 15. Given this RFC, and taking into account Clubb's age, education, and work experience, the ALJ determined at step five that Clubb could perform jobs existing in significant numbers in the national economy, those being an office cleaner, a cafeteria attendant, and a cashier. Accordingly, the ALJ concluded that Clubb was not disabled as defined by the Act from July 15, 2003, through December 31, 2008, the date he was last insured.

## V. **DISCUSSION**

Clubb advances several objections to the ALJ's decision; each is addressed below.

### A. Credibility Determination

Clubb argues that the ALJ "failed to make a finding regarding Plaintiff's credibility," and "cites no evidence to detract from claimant's credibility." Clubb's Br. at 4-5. The Court agrees that the ALJ's credibility determination requires reversal.

In determining credibility, an ALJ must consider several factors, including the claimant's daily activities, level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, and justify her finding with specific reasons. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). "Furthermore, the ALJ may not discredit a claimant's testimony about [a claimant's] pain and limitations solely because there is no objective medical evidence supporting it." *Id.* (citations omitted).

Here, the ALJ concluded that Clubb's "minimal pursuit of treatment, as well as the treatment notes themselves, [did] not support the degree of limitations alleged by the claimant or a finding of disability prior to the date last insured." Tr. at 16. After making this summary introductory statement, the ALJ proceeded to discuss the treatment records concerning Clubb's COPD and degenerative disc disease, noting that they did not support Clubb's complaints of disabling symptoms. In other words, the ALJ rejected Clubb's subjective complaints regarding

6

his COPD and degenerative disc disease solely because there was no supporting objective medical evidence. As outlined by the case law above, this was improper. The Court is also troubled by the fact that the ALJ did not give *any* reason for discrediting Clubb's incapacitating complaints regarding his abdominal issues.

Because the ALJ's credibility determination was improper, this matter must be remanded to the Commissioner. On remand, the ALJ is instructed to specifically consider Clubb's daily activities, level of pain or symptoms, aggravating factors, medication, treatment, and limitations in relation to her credibility determination, and justify her findings with specific reasons. Again, the ALJ may not discredit Clubb's subjective complaints solely because there is no objective medical evidence supporting them.[5]

### B. Effect of Combined Impairments

Clubb also argues that "[n]owhere in the decision is there any discussion of [Clubb's] impairments in combination." Clubb's Br. at 4. Indeed, a claimant suffering from multiple impairments, none of which individually meets a listed impairment, will be found to equal a listing if the findings related to those impairments are at least of equal medical significance to the findings of a closely analogous listed impairment. 20 C.F.R. § 404.1526(b)(3). Accordingly, "an ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) (citing 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

---

[5] Clubb also criticizes the ALJ for using irrational boilerplate language to explain his credibility determination. As noted by this Court on several occasions, the Court shares in the sentiments expressed by the Seventh Circuit regarding the meaninglessness of certain Social Security "templates," similar to the one used here. *See, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012).

7

Although Clubb does not specify which listing his impairments might equal or how, on remand, the ALJ should consider and substantively discuss the effect, if any, of Clubb's combined impairments on the ALJ's listing analysis.

### C. Onset Date

Lastly, Clubb argues that the ALJ did not follow SSR 83-20 in determining an onset date. "SSR 83-20 addresses situations in which an ALJ finds that a person is disabled as of the date [he] applied for disability insurance benefits, but it is still necessary to ascertain whether the disability arose prior to an even earlier date—normally, when the claimant was last insured." *Eichstadt v. Astrue*, 534 F.3d 663, 666 (7th Cir. 2008) (citation omitted). In *Eichstadt*, the court reasoned as follows regarding SSR 83-20:

> The Commissioner reads SSR 83-20 as urging the ALJ to seek a medical examiner's opinion only after a finding of disability has been made. We give some deference to the Commissioner's interpretations, and we find this one to be entirely reasonable. The ALJ in this case found that Eichstadt was not disabled at any point before December 31, 1987[, her date last insured]. With no finding of disability, there was no need to determine an onset date.

*Id.* at 667.

Similarly, ALJ LaRiccia determined that Clubb was not disabled at any time prior to December 31, 2008, the date he was last insured. Thus, consistent with *Eichstadt*, she was not required to determine an onset date. Nevertheless, if, on remand, the ALJ determines that Clubb was disabled at some point prior to December 31, 2008, she should follow the requirements of SSR 83-20 in determining his onset date.

## VI. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **REVERSED** and this cause is **REMANDED** to the Commissioner for further proceedings consistent with this Entry.

SO ORDERED: 9/16/14

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.